STATE of Wisconsin, Plaintiff-Respondent,

v.

James G. BRERETON, Defendant-Appellant.†

Court of Appeals

*No. 2010AP1366–CR. Submitted on briefs June 7, 2011.
—Decided August 10, 2011.*

## 2011 WI App 127

(Also reported in 804 N.W.2d 243.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Matthew S. Pinix* of *Law Office of Matthew S. Pinix, LLC* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J.   James G. Brereton appeals the denial of his motion to suppress evidence obtained through use of a Global Positioning System (GPS) tracking device attached to his car by police at a tow lot. He contends that his car was unlawfully seized in order to place the GPS device, and that the GPS device was more technologically advanced (and therefore more intrusive) than the warrant for its placement allowed. We affirm because the police did have probable cause to seize the vehicle and then the GPS device was placed pursuant to a lawful warrant.

¶ 2.   In October 2007, the police departments of Walworth and Rock counties were jointly investigating a series of about thirty-five burglaries along the county border. As part of that investigation, the police received tips regarding a "Robin's egg blue" or teal "Pontiac Grand Prix or Grand Am" in the vicinity of several of the burglaries. Eventually, a citizen was able to give a license plate number for the vehicle. The car's license plates had expired in August 2007.

¶ 3.   On October 5, 2007, the police initiated a traffic stop of a blue Pontiac with the license plate given by the citizen. At the suppression hearing, the police admitted it was a "pretextual stop" for the purpose of getting a GPS device into the car. Once the car pulled over, police discovered that both of its occupants—one of whom was Brereton—also had revoked driver's licenses. In addition, the police discovered that the car's VIN number did not match the plates that were on it. The police removed the occupants from the car and took them to a nearby Dollar Store. Then, the car was towed to an impound lot. After a warrant was obtained authorizing the placement of a GPS tracking device,

police opened the hood and installed the GPS. Eventually, the car was returned to where it had been stopped, and its occupants were never notified that it had been moved.

¶ 4.   The GPS tracking device was able to monitor the car's whereabouts in real time and send police text message updates. Four days after it was installed, the police obtained the information they needed—the car was tracked to the site of a reported burglary. Based on the tracking, police were able to stop the car and arrest its occupants, one of whom was Brereton. Brereton was charged with several counts of burglary. After an unsuccessful motion to suppress, he pled guilty to some of the charged counts; others were dismissed and read in. This appeal follows.

## DISCUSSION

¶ 5.   Whether police violated the constitutional protection against search and seizure is a question of constitutional fact. *State v. Arias*, 2008 WI 84, ¶ 11, 311 Wis. 2d 358, 752 N.W.2d 748. We will uphold the trial court's findings of historical fact unless they are clearly erroneous. *Id.*, ¶ 12. Then, we review de novo whether those facts constitute a Fourth Amendment violation. *Id.*, ¶ 11. In this case, the parties do not dispute the facts so much as their application to the law.

¶ 6.   We begin with an overview of the law surrounding the Fourth Amendment and GPS devices. In *State v. Sveum*, 2009 WI App 81, ¶ 1, 319 Wis. 2d 498, 769 N.W.2d 53 (*Sveum I*), we held that "no Fourth Amendment search or seizure occurs when police attach a GPS device to the outside of a vehicle while it is in a place accessible to the public and then use that

device to track the vehicle while it is in public view." *Sveum I* was affirmed on other grounds in *State v. Sveum*, 2010 WI 92, ¶ 3, 328 Wis. 2d 369, 787 N.W.2d 317 (*Sveum II*), so it is binding.

¶ 7. In *Sveum II*, the supreme court declined to reach the issue of whether there was a seizure under the Fourth Amendment. *Sveum II*, 328 Wis. 2d 369, ¶¶ 2–3. Instead, the court focused on the legality of the warrant obtained by police to attach a GPS device to the car of an alleged stalker. *Id.*, ¶¶ 3–4. The device was attached to the outside of the defendant's car while the car was parked in his driveway. *Id.*, ¶ 8. Before police could obtain information from the device, they had to remove it and download its contents onto a computer. *Id.*, ¶¶ 8–9. They monitored the defendant for thirty-five days in this fashion. *Id.*, ¶ 59. The *Sveum II* court held that under the circumstances, thirty-five days of monitoring under a single warrant was reasonable. *Id.*, ¶ 67.

¶ 8. Brereton distinguishes his case from *Sveum I*'s holding, arguing that, instead of GPS placement *outside* the vehicle and *in a public place,* the facts here showed a GPS device being placed *inside* the hood of his vehicle while it was in an impound lot, inaccessible to him and *out of public view. Cf. Sveum I*, 319 Wis. 2d 498, ¶¶ 1, 7. Therefore, he argues, the Fourth Amendment is implicated. We agree with Brereton on this point—this is not a *Sveum I* case, and the Fourth Amendment issue must be addressed. So, before we can even reach the validity of the warrant to attach the GPS device, we must decide whether Brereton's Fourth Amendment rights were violated *before* the warrant was obtained—in other words, whether the police were lawfully in a position to attach the GPS device when they obtained a warrant to do so.

*Probable Cause*

██

¶ 9.    Brereton does not waste time arguing that he was stopped illegally. Rather, he takes issue with the police removing him from his vehicle and transferring his vehicle to a separate location, thus exercising "exclusive control over [the vehicle]" without legal authority to do so. He claims that, while there may have been a right to stop him, only probable cause will allow the police to do what they did here. Brereton contends that there was no probable cause. Anticipating the State's argument, Brereton argues that the police did not have probable cause to believe that the vehicle contained evidence of a crime because two days had passed since the most recent reported burglary. As he points out, to establish probable cause to search, evidence must indicate a "fair probability" that a particular place contains evidence of a crime. *State v. Carroll*, 2010 WI 8, ¶ 28, 322 Wis. 2d 299, 778 N.W.2d 1. He also contends that because vehicles are mobile, it was unreasonable to believe evidence was still in the car after two days had passed. We will answer this argument first. We disagree. While a car's mobility may increase the likelihood that evidence would have been disposed of, it is not enough to preclude a finding that there was a "fair probability" that it might contain evidence of a crime. Mobility is a factor to be sure. But if the car has been seen at prior similar crimes and has a VIN number that does not match the license plates, mobility becomes less the problem.

██

¶ 10.    Brereton's main argument is that "[n]o law enforcement officer testified to what evidence or contraband was expected to be found in the vehicle at the

time that it was seized." However, the officer's subjective motivations are not dispositive. What matters is whether there was an objective justification for the seizure. *See State v. Mata*, 230 Wis. 2d 567, 574, 602 N.W.2d 158 (Ct. App. 1999). When police stopped the vehicle, they already knew that it matched the description and license plate number of one seen near many recent burglaries. So, the vehicle itself was evidence in the ongoing investigation of the burglaries, and there was a "fair probability" that it might also contain stolen property. *See Carroll*, 322 Wis. 2d 299, ¶ 28. Under these facts, the police had probable cause.

*GPS Warrant*

¶ 11. Finally, we address whether the warrant issued gave the police the authority to install the GPS device and then use it to monitor the car's whereabouts in real time. Whether a search and seizure pursuant to a warrant is constitutionally valid is a two-part inquiry. *Sveum II*, 328 Wis. 2d 369, ¶ 19. First, the warrant must be validly issued. *Id.* Second, the warrant must be reasonably executed. *Id.*

¶ 12. Brereton's claim that the warrant was invalid has, as its foundation, a belief that the supporting affidavit contained information gathered as a result of the "illegal seizure" of Brereton's car. But, as we already explained, the seizure of the car was lawful, so there is no problem with the inclusion of information obtained from that stop in the probable cause for the warrant. We therefore hold that the warrant was validly issued.

¶ 13. Brereton next argues that the level of technology used in this case exceeded the scope of what was allowable under the warrant issued. As he points out,

152

the warrant was issued based on an affidavit that requested a GPS device that would "periodically record[] at specific times, the latitude, longitude, date and time of readings and stores these readings until they are downloaded to a computer." The GPS device that was attached to the car, however, allowed continuous live tracking of the car's movements. The police then received text message updates when the vehicle began to move and when it stopped. As Brereton points out, the unreasonable execution of an otherwise valid search warrant can run afoul of the constitution. *See id.*, ¶ 53. In support of his argument that the police execution in this case was unreasonable, Brereton notes that the technology used in this case was more intrusive that that used in *Sveum I* and *II*. *See Sveum II*, 328 Wis. 2d 369, ¶¶ 8–9.

■■

¶ 14.   We agree with Brereton that the GPS device used in this case was more technologically advanced, and therefore more intrusive than the one described in the affidavit or the one used in *Sveum I* and *II*. However, we also note that it is "generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by the warrant—subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.' " *Sveum II*, 328 Wis. 2d 369, ¶ 53 (citing *Dalia v. United States*, 441 U.S. 238, 257 (1979)). Whether a search is reasonable depends on "the particular circumstances of the case" and requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Sveum II*, 328 Wis. 2d 369, ¶ 54 (citation omitted).

¶ 15. We hold that the police were operating reasonably and within their discretion when they attached a GPS device to Brereton's car. They took the time to obtain a warrant. The warrant authorized them to put a GPS device on the car to monitor the car's whereabouts. Unlike the device used in *Sveum I* and *II*, the GPS device in this case was only in use for four days (until the police obtained information they could use). And the fact that there was a warrant and that the device was in play for only four days is what distinguishes the facts of this case from *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), *cert granted, United States v. Jones*, 131 S. Ct. 3064 (June 27, 2011), a case heavily relied on by Brereton. In that case, the court emphasized the level of intrusion involved when the police, without a warrant, attached a GPS device to the defendant's car and monitored his whereabouts "24 hours a day for four weeks." *Id.* at 555, 562–64. Under the facts of this case, however, we see no reason to find that the police overstepped their bounds simply because they were able to monitor the movements in real time rather than needing to continually return to the car, remove the device, and download its information to a computer. Though we can envision scenarios where prolonged use of this device might be unreasonable under the Fourth Amendment, we do not believe this case crosses the line.

*By the Court.*—Judgment affirmed.