STATE of Wisconsin,
Plaintiff-Respondent,

v.

Michael A. SVEUM,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP658–CR. Oral argument March 2, 2010.
—Decided July 20, 2010.*

2010 WI 92

(Also reported in 787 N.W.2d 317.)

376

For the defendant-appellant-petitioner there were briefs by *Dean A. Strang, Marcus J. Berghahn,* and *Hurley, Burish & Stanton, S.C.,* Madison, and oral argument by *Dean A. Strang.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *J.B. Van Hollen,* attorney general.

An amicus curiae brief was filed by *Amelia L. Bizzaro* and *Henak Law Office, S.C.,* Milwaukee; *Laurence Jacques Dupuis and the American Civil Liberties Union of Wisconsin Foundation,* Milwaukee; *G. Michael Halfenger and Foley & Lardner, LLP,* Milwaukee; *Catherine Crump and the American Civil Liberties Union Foundation,* New York, N.Y.; and *Jennifer Granick and the Electronic Frontier Foundation,* San Francisco, Cal., and oral argument by *G. Michael Halfenger.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] affirming the circuit court's judgment[2] convicting Michael A. Sveum (Sveum) of aggravated stalking and denying Sveum's post-conviction motion for a new trial. In upholding the judgment of conviction, the court of appeals affirmed the circuit court's denial of Sveum's motion to suppress evidence obtained from a Global Positioning System (GPS) tracking device, which law enforcement attached to Sveum's car. Our focus is on whether the circuit court erred in its denial of Sveum's suppression motion.

¶ 2. Sveum and the State have briefed two issues for purposes of our review: (1) whether the installation of a GPS tracking device to Sveum's car while his car was parked in the driveway of his home and the subsequent electronic monitoring of Sveum's car using the GPS constituted a search or seizure within the meaning of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution; and (2) whether the court order authorizing the installation and monitoring of a GPS tracking device on Sveum's vehicle constituted a valid warrant and, if so, whether the police reasonably executed the warrant.

¶ 3. We elect not to resolve the first issue, and assume, without deciding, that a search or seizure occurred in this case that required authorization by a warrant. We therefore decide only the second issue, concluding that the order authorizing law enforcement to install and monitor a GPS tracking device on Sveum's vehicle constituted a valid warrant and that

---

[1] *State v. Sveum* (*Sveum II*), 2009 WI App 81, 319 Wis. 2d 498, 769 N.W.2d 53.

[2] The Honorable Steven D. Ebert of Dane County presided.

the officers' execution of the warrant was reasonable. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 4.  In 1996, "Sveum was charged with stalking and harassing Jamie Johnson [(Johnson)], his former girlfriend." *State v. Sveum (Sveum I)*, 220 Wis. 2d 396, 399, 584 N.W.2d 137 (Ct. App. 1998). "He was also charged with violating a harassment injunction for contacting [Johnson] personally and by telephone" and "criminal damage to property." *Id.* Sveum was convicted of all charges, which the court of appeals affirmed. *Id.* He was sentenced to 11 years of probation for the stalking conviction that commenced upon serving three consecutive, three-year prison terms for the remaining three convictions. Sveum remained in confinement until his mandatory release date of July 2, 2002, when he was released on probation and parole.

¶ 5.  In March 2003, Johnson reported to the police that she believed Sveum was stalking her again. On April 22, 2003, Detective Mary Ricksecker (Ricksecker) requested circuit court authorization to install and monitor an electronic device on Sveum's vehicle. Specifically, she requested to attach a GPS tracking device to Sveum's vehicle, a 1980 black Chevy Beretta Coup with a Wisconsin license plate number of 754 ELL and a Vehicle Identification Number (VIN) of 1G1LZ14A2LY130646, and to monitor the tracking device "inside such private and public areas." She further requested "permission to obtain a key to operate the motor vehicle, if necessary" and "to use the same methods to retrieve the device." Finally, she requested "that the order be authorized for a period of time not to exceed 60 days from the date the order is signed."

379

¶ 6. Ricksecker filed an affidavit in support of this request, alleging that GPS monitoring of Sveum's vehicle "could provide relevant information to the criminal investigation of the crime of stalking." Ricksecker averred the following:

> That the affiant is a state certified law enforcement officer currently assigned as Detective with the Madison Police Department. Your affiant has worked full-time as a law enforcement officer for a[p]proximately 22 years. Your affiant has investigated numerous cases involving harassing phone calls, violation of restraining orders, domestic violence, sexual assaults and stalking. Your affiant has received formal training in the investigation of stalking and has trained law enforcement officers on the investigation of the crime of Stalking, in violation of Wisconsin Statute 940.32.
>
> On 12–21–1994 Michael A[.] Sveum, dob 08–04–67, was convicted of Violation of a Domestic Abuse Order . . . . The complain[an]t in the case was Jamie Johnson. On 12–11–1995 Sveum was convicted . . . of Violation of a Domestic Abuse Order. Your Affiant knows the facts in this case were based on hang-up calls received by Jamie Johnson at her residence.
>
> On 10–09–1996 Sveum was convicted . . . of Felony Stalking, Violation of a Harassment Restraining Order, and Harassment. The victim in this case was Jamie Johnson. Your affiant investigated this criminal case and knows the facts of the complaint. Johnson was receiving hang-ups during the course of the criminal behavior, which ceased upon him becoming incarcerated. Two hours after Sveum was released on bail . . . she reported a hang-up call.
>
> . . .
>
> [Sveum] is currently employed in the City of Madison and living at 6685 Cty Tk K Blue Mounds.

On 3–28–03 Jamie Johnson a resident in the City of Madison reports that where she currently resides with the phone number is []. Since 3–3-03 thru 4–12–03 she and her housemate have received nine hang-up calls at that number. She reports that the caller ID information lists "PRIVATE". She indicates prior to this they have not had any hang-up calls. Johnson advised your affiant that TDS Metrocom is the service provider for [her phone number]. Your affiant believes the information provided by Johnson to be truthful and reliable as it was gained by her as a witness to the events above.

Your affiant contacted TDS Metrocom for records of the incoming hang-up calls reported by Johnson. Your affiant believes the information kept by TDS . . . to be truthful and reliable as it [is] kept in the normal course of business. Your affiant knows that hang-up calls could be criminal harassment or felony stalking.

From the information provided by TDS Metrocom and information from the Dane County 911 dispatch center, your affiant learned the hang-up calls were made from pay phones located at the Meadowood Library 5740 Raymond Rd, Party City located at 223 Junction Rd., American TV located at 2404 W. Beltline hwy, Super America located at 2801 Fish Hatchery Rd, Kohl's food store located at 3010 Cahill Rd, and Kitt's Korner Sports Bar and Grill located at 3738 County Rd P. All of these locations are in the County of Dane. Your affiant believes the information provided by 911 Dispatch to be truthful and reliable as it is kept in the normal course of business.

Your affiant has found in the course of this investigation that Michael Sveum is the primary user and/or exercises dominion and control over a 1980 black Chevy Beretta Coup with a Wisconsin license plate number of 754 ELL and a VIN number of 1G1LZ14A2LY130646, which is stored and/or parked at an address of 6685 County Trunk K in Iowa County, Wisconsin or stored or

381

parked at 2426 Valley Street, Cross Plains in Dane County, Wisconsin, herein after referred to as "the Target Vehicle." . . .

[A] records check with the Wisconsin Department of Transportation . . . indicate[d] the owner of the aforementioned Target Vehicle . . . [is] Michael Sveum with a VIN number of 1G1LZ14A2LY130646, at an address of 2426 Valley Street, Cross Plains, Dane County, Wisconsin.

. . .

Your affiant believes that Sveum . . . maintains dominion and control over as well as being the primary user of the aforementioned vehicle.

. . .

Your affiant states that there is probable cause to believe based on the above information that the Target Vehicle is presently being utilized in the commission of a crime to wit, stalking . . . . Your affiant states that there is probable cause to believe that the installation of a [GPS] tracking device on the Target Vehicle in conjunction with the monitoring, maintenance and retrieval of information from that [GPS] tracking device will lead to evidence of the aforementioned criminal violations including the places of the violation and the means of the violation and the identification of associates assisting in the aforementioned violations.

Your affiant states that the [GPS] tracking device, which is covertly placed on a criminal suspect's automobile, is equipped with a radio satellite receiver, which, when programmed, periodically records, at specified times, the latitude, the longitude, date and time of readings and stores these readings until they are downloaded to a computer interface unit and overlaid on a computerized compact disc mapping program for analysis.

. . .

That based upon the affiant's experience, the [GPS] tracking devices internal battery packs limited use necessitates the use of the suspect's automobile battery power in order to effectively install, monitor, and maintain the [GPS] tracking device over an extended period of time . . . .[3]

. . .

Your affiant is aware that persons involved in criminal activities or conspiracies maintain the means and fruits of their violations, often in remote locations including garages, homes and storage sheds. Your affiant believes that the installation of the [GPS] tracking device has been shown to be a successful supplement to visual surveillance of the vehicle due to the inherent risks of detection of manual, visual surveillance by the target of law enforcement personnel. The [GPS] tracking device lessens the risk of visual detection by the suspect and is generally considered more reliable since visual surveillance often results in the loss of sight of the Target Vehicle.

¶ 7.   On the same day Ricksecker requested authorization, the circuit court issued an order granting her request to install and monitor a GPS tracking device on Sveum's vehicle. The court concluded that "[b]ased on the information provided in the affidavit submitted by Detective Ricksecker, the court finds that there is probable cause to believe that the installation of a tracking device in the below listed vehicle is relevant to an on-going criminal investigation and that the vehicle

---

[3] Contrary to Ricksecker's affidavit, the GPS unit that was attached to Sveum's vehicle did not "necessitate[] the use of the suspect's automobile battery power." Ricksecker testified that the GPS unit contained its own battery, which powered the device.

383

is being used in the commission of a crime of stalking . . . ." The court ordered the following:

1. The State['s] request to install and monitor a tracking device on the below listed vehicle is granted based on the authority granted in [*United States v. Karo*, 468 U.S. 705 (1984)].

2. The Madison Police Department is authorized to place an electronic tracking device on a 1990 black Beretta with a license plate number of 754 ELL and a VIN of 1G1LZ14A2LY130646, and they are hereby authorized to surreptitiously enter and reenter the vehicle and any buildings and structures containing the vehicle or any premises on which the vehicle is located to install, use, maintain and conduct surveillance and monitoring of the location and movement of a mobile electronic tracking device in the vehicle and any and all places within or outside the jurisdiction of Iowa or Dane County, including but not limited to private residence and other locations not open to visual surveillance; to accomplish the installation, agents are authorized to obtain and use a key to operate and move the vehicle for a required time to a concealed location and are authorized to open the engine compartment and trunk areas of the vehicle to install the device.

3. It is further ordered that the Madison Police Department shall remove the electronic tracking device as soon as practicable after the objectives of the surveillance are accomplished or not later than 60 days from the date the order is signed unless extended by this court or another court of competent jurisdiction.

¶ 8.   In the early morning hours of April 23, 2003, Ricksecker and three other law enforcement officers located Sveum's vehicle parked in the driveway of 2426 Valley Road, Cross Plains. A battery-powered GPS tracking device was attached to the "undercarriage" of Sveum's vehicle with magnetic equipment and tape.

The officers did not open the engine compartment or trunk area of the vehicle while installing the GPS. Because of the limited battery life of the GPS, the officers replaced the GPS twice. Both replacement devices were attached to Sveum's vehicle in the same manner in which the first was attached, i.e., to the undercarriage of the vehicle with magnetic equipment and tape while parked in the driveway of 2426 Valley Road, Cross Plains. The third and final GPS was removed from Sveum's vehicle on May 27, 2003.

¶ 9. Upon removal of the GPS devices, the stored information on each of the GPS devices was downloaded and then stored on a disk. The information from the disk was put on a map so the officers could see where Sveum's vehicle had traveled.

¶ 10. The GPS device revealed data incriminating Sveum. The GPS data indicated that on April 25, 2003, Sveum's vehicle traveled to a location 468 feet from Johnson's residence, and his vehicle remained there from 8:14 p.m. to 9:08 p.m. Sveum's vehicle then traveled to a shopping mall near Mineral Point Road and the Beltline Highway and remained there from 9:16 p.m. to 9:19 p.m. Phone records indicated that at 9:17 p.m. Johnson received a hang-up call from a pay phone located near the shopping mall where Sveum's vehicle was. Additionally, the GPS data demonstrated that on April 26, 2003, Sveum's vehicle traveled to a location 277 feet from Johnson's residence and remained there from 8:28 p.m. to 9:43 p.m.

¶ 11. Based, in part, on the above-described tracking data from the GPS devices, the police obtained two additional search warrants. One warrant authorized the police to search the premises located at 2426 Valley Road, Cross Plains and Sveum's vehicle. The search revealed evidence incriminating Sveum, including pho-

tos of Johnson, a handwritten chronological log recording sightings of Johnson and letters sent to his sister, Renee Sveum, asking for information about Johnson. The other warrant authorized the police to search the premises located at 6685 County Trunk Highway K, Renee Sveum's residence, which did not reveal any incriminating evidence.

¶ 12. On August 4, 2003, the State filed a complaint charging Sveum[4] with aggravated stalking as a party to a crime contrary to Wis. Stat. § 940.32(3)(b) (2001–02)[5] and Wis. Stat. § 939.05 (2001–02). Sveum filed a motion to suppress all information obtained from the GPS device, arguing that it was unlawfully obtained in violation of the Fourth Amendment.[6] The circuit court denied the motion on the grounds that installing and monitoring the GPS device was not a search. While the circuit court did not specifically address whether the court order authorizing police use of the GPS device was a warrant, it noted that the affidavit provided sufficient probable cause to obtain the order.

¶ 13. The case proceeded to trial where a jury found Sveum guilty of the charged offense. On February 6, 2007, the court entered a judgment of conviction and sentenced Sveum to seven years and six months in

---

[4] The complaint also charged Renee Sveum with aggravated stalking as a party to a crime contrary to Wis. Stat. § 940.32(3)(b) (2001–02) and Wis. Stat. § 930.05 (2001–02). We do not discuss the charges against Renee as she is not a party to this appeal.

[5] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[6] Sveum filed two additional motions to suppress items seized from 2426 Valley Road, Cross Plains and a black knit ski mask seized from Sveum's vehicle, which the circuit court denied. Neither of these motions is relevant to this appeal.

prison followed by five years of extended supervision. Sveum filed a motion for post-conviction relief, seeking a new trial on various grounds, all of which the court rejected.

¶ 14. The court of appeals affirmed. *State v. Sveum (Sveum II)*, 2009 WI App 81, ¶ 2, 319 Wis. 2d 498, 769 N.W.2d 53. The court of appeals addressed a number of issues not raised in this court. *Id.*, ¶¶ 1–2. On the Fourth Amendment issue, the court of appeals concluded that installing and monitoring the GPS device on Sveum's vehicle did not constitute a search or a seizure within the meaning of the Fourth Amendment. *Id.*, ¶ 6. As such, the court did not address whether the court order authorizing the installation and monitoring of the GPS device was a warrant. *Id.*, ¶ 6 & n.3.

¶ 15. Sveum petitioned this court for review, which we granted. We now affirm the decision of the court of appeals.

## II. STANDARD OF REVIEW

¶ 16. In reviewing the denial of a motion to suppress evidence, we will uphold a circuit court's findings of historical fact unless they are clearly erroneous. *State v. Arias,* 2008 WI 84, ¶ 12, 311 Wis. 2d 358, 752 N.W.2d 748. However, "[t]he question of whether police conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact" that we review independently. *Id.*, ¶ 11 (internal quotations and brackets omitted).

¶ 17. Whether the language of a court order satisfies the requisite constitutional requirements of a warrant is a question of law we review independently. *See State v. Meyer*, 216 Wis. 2d 729, 744, 576 N.W.2d 260 (1998).

## III. DISCUSSION

¶ 18. The Fourth Amendment of the United States Constitution guarantees that persons shall be secure from "unreasonable searches and seizures and sets forth the manner in which warrants shall issue." *State v. Henderson*, 2001 WI 97, ¶ 17, 245 Wis. 2d 345, 629 N.W.2d 613. The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[7]

A search and seizure conducted without a warrant issued pursuant to the requirements of the Fourth Amendment is presumptively unreasonable. *Henderson*, 245 Wis. 2d 345, ¶ 19.

---

[7] Similarly, the Wisconsin Constitution, Article I, Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

"Historically, we generally have interpreted Article I, Section 11 to provide the same constitutional guarantees as the Supreme Court has accorded through its interpretation of the Fourth Amendment." *State v. Kramer*, 2009 WI 14, ¶ 18, 315 Wis. 2d 414, 759 N.W.2d 598. The development of Wisconsin law on search and seizure follows this tradition and parallels that developed by the United States Supreme Court. *State v. Henderson*, 2001 WI 97, ¶ 17 n.4, 245 Wis. 2d 345, 629 N.W.2d 613.

¶ 19.  Whether a search and seizure pursuant to a warrant is constitutionally valid is a two-part inquiry. First, the Warrant Clause demands that all warrants be validly issued. *Id.* Second, the Reasonableness Clause requires that warrants be reasonably executed. *Id.*, ¶ 18.

## A. Warrant Clause

¶ 20.  The "warrant clause provides [] particularized protections governing the manner in which search and arrest warrants are issued." *Id.*, ¶ 19. The United States Supreme Court has interpreted the Warrant Clause to be " 'precise and clear,' " and as requiring only three things:  (1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized. *Dalia v. United States,* 441 U.S. 238, 255 (1979) (quoting *Stanford v. Texas,* 379 U.S. 476, 481 (1965)).

### 1. Neutral and detached magistrate

¶ 21.  First, when officers obtain prior judicial authorization for a search, the magistrate who issues the warrant must be neutral and detached. *Henderson,* 245 Wis. 2d 345, ¶ 19 (citing *Dalia,* 441 U.S. at 255). This requirement protects citizens because " 'the usual inferences which reasonable men draw from evidence' " are " 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' " *State ex rel. White v. Simpson,* 28 Wis. 2d 590, 597, 598, 137 N.W.2d

391 (1965) (quoting *Johnson v. United States,* 333 U.S. 10, 14 (1948) (concluding that "the determination of the district attorney does not constitute the determination of a neutral and detached magistrate")). We have explained that the purpose of this rule "is to interpose the impartial judgment of a judicial officer between the citizen and the police and also between the citizen and the prosecutor, so that an individual may be secure from an improper search." *Id.* at 598.

### 2. Probable cause

¶ 22. Second, "the officer seeking a warrant [must] demonstrate upon oath or affirmation probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense." *Henderson,* 245 Wis. 2d 345, ¶ 19 (quoting *Warden v. Hayden,* 387 U.S. 294, 307 (1967)). "[W]hen no sworn testimony exists to support a search warrant, then the warrant is void." *State v. Tye,* 2001 WI 124, ¶ 13, 248 Wis. 2d 530, 636 N.W.2d 473 (citing *State v. Baltes,* 183 Wis. 545, 553, 198 N.W. 282 (1924)).

¶ 23. The Wisconsin constitutional oath or affirmation provision has been reinforced by legislation. *Id.,* ¶ 11. A search warrant may be based either "upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter," Wis. Stat. § 968.12(2), or "upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication," Wis. Stat. § 968.12(3)(a).

¶ 24. A search warrant may issue only on probable cause. *State v. Higginbotham,* 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991). The task of the issuing magis-

trate is to determine whether, under the totality of the circumstances, given all the facts and circumstances set forth in the affidavit, " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. DeSmidt,* 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). The probable cause standard is not a "technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Petrone,* 161 Wis. 2d 530, 547–48, 468 N.W.2d 676 (1991), *overruled in part by State v. Greve,* 2004 WI 69, 272 Wis. 2d 444, 681 N.W.2d 479 (citing *Texas v. Brown,* 460 U.S. 730, 743 (1983)).

¶ 25.   "We accord great deference to the warrant-issuing judge's determination of probable cause and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *Higginbotham,* 162 Wis. 2d at 989; *see also Gates,* 462 U.S. at 236. "The duty of the reviewing court is to ensure that the magistrate had a substantial basis for concluding that the probable cause existed." *Higginbotham,* 162 Wis. 2d at 989. Such determination is "confined to the record that was before the warrant-issuing judge." *Id.*

¶ 26.   Our deferential review of the warrant-issuing judge's probable cause determination is " 'appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' " *Id.* at 990 (quoting *Massachusetts v. Upton,* 466 U.S. 727, 733 (1984) (further quotation omitted)). Accordingly, we resolve doubtful or marginal cases regarding a probable

cause finding in light of the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Id.*

## 3. Particularity

¶ 27. Finally, the warrant clause requires "that warrants [] particularly describe the place to be searched, as well as the items to be seized." *Henderson,* 245 Wis. 2d 345, ¶ 19 (citing *Dalia,* 441 U.S. at 255). "In order to satisfy the particularity requirement, the warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *State v. Noll,* 116 Wis. 2d 443, 450–51, 343 N.W.2d 391 (1984). A general description of the items to be seized is constitutionally acceptable when a more specific description is not available. *Id.* at 451.

¶ 28. The particularity requirement fulfills three objectives. *Petrone,* 161 Wis. 2d at 540. It prevents general searches, the issuance of warrants on less than probable cause and the seizure of objects other than those described in the warrant. *Id.*

¶ 29. In *United States v. Karo,* 468 U.S. 705 (1984), the Court was called on to decide whether the warrantless monitoring of a "beeper," an electronic tracking device, in a private residence constituted a search within the meaning of the Fourth Amendment. *Id.* at 707. The Court concluded that monitoring the beeper in a private residence constituted a warrantless search. *Id.* at 714. In so concluding, the Court rejected the argument that a warrant should not be required to authorize the installation and monitoring of electronic

tracking devices "because of the difficulty in satisfying the particularity requirement of the Fourth Amendment." *Id.* at 718.

¶ 30.   Specifically, the "Government contend[ed] that it would be impossible to describe the 'place' to be searched, because the location of the place is precisely what is sought to be discovered through the search." *Id.* The Court explained that a warrant application that "describe[s] the object into which the [tracking device] is to be placed, the circumstances that led agents to wish to install the [tracking device], and the length of time for which [] surveillance is requested" is sufficient to satisfy the constitution's particularity requirement and will "permit issuance of a warrant authorizing [] installation [of a tracking device] and surveillance." *Id.*

### 4. Severability doctrine

¶ 31.   In the event of a constitutionally defective search warrant, we may apply the exclusionary rule,[8] which bars all evidence obtained pursuant to the defective warrant from a criminal proceeding against the defendant whose constitutional rights have been violated. *See State v. Ward,* 2000 WI 3, ¶ 46, 231 Wis. 2d 723, 604 N.W.2d 517. However, in *Noll,* we addressed the issue of the appropriate remedy for items seized pursuant to a partially defective search warrant. *Noll,* 116 Wis. 2d at 451.

¶ 32.   In *Noll,* we concluded that a search warrant authorizing the seizure of "various long play phono-

---

[8] We note that there are exceptions to the exclusionary rule not relevant to the outcome of this case. For example, we recognize a good faith exception to the exclusionary rule. *See, e.g., State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625; *State v. Ward,* 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517.

graph albums, and miscellaneous vases and glassware items" lacked the required particularity; however, the remaining items described in the warrant were "sufficiently particular to satisfy the constitutional requirement." *Id.* at 451. As such, the search warrant was defective only with respect to those items that were seized, but inadequately described.

¶ 33. We recognized the harshness of applying the exclusionary rule to search warrants that are partially defective. Quoting Professor LaFave, we explained: " '[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.' " *Id.* at 454 (quoting 2 Wayne R. LaFave, *Search and Seizure* § 4.6(f) (1978)). Indeed, we further noted that such a rule would "unduly hamper[] the government's efforts to gather evidence of crime and is not compelled by the purposes underlying the exclusionary rule." *Id.* at 460.

¶ 34. To avoid such harsh results, we adopted the "severability doctrine," which permits reviewing courts to excise the defective portions of an otherwise valid warrant. *Id.* at 445.[9] We explained that "admitting those

---

[9] *Accord United States v. Brown,* 984 F.2d 1074, 1077–78 (10th Cir. 1993) (noting that "[a]t least eight circuits have held that where a warrant contains both specific as well as unconstitutionally broad language, the broad portion may be redacted and the balance of the warrant considered valid"); *United States v. Blakeney,* 942 F.2d 1001, 1027 (6th Cir. 1991) ("We believe the proper approach . . . is to sever the infirm portion of the search warrant from the remainder which passes constitutional muster."); *Iowa v. Randle,* 555 N.W.2d 666, 671 (Iowa 1996) (same).

items seized pursuant to the valid parts of the warrant and suppressing those items seized" under the defective portion, "strike[s] the proper balance between the government's obligation to enforce its laws to protect its citizens from wrongdoers and the citizen's right to be secure . . . from unreasonable government intrusion[s]." *Id.* at 454.

¶ 35. We concluded that application of the severability doctrine was proper, and therefore, we excised the defective warrant provisions from the valid warrant provisions. The items seized pursuant to the valid portion of the warrant were admitted, and those items seized pursuant to the defective portion were suppressed. *See id.*

¶ 36. The court of appeals applied the severability doctrine to a search warrant in *State v. Marten,* 165 Wis. 2d 70, 477 N.W.2d 304 (Ct. App. 1991). In *Marten,* a search warrant authorized police to search a "home, yard and 'outbuildings' " for drug paraphernalia based on information provided by an informant and through police officer surveillance. *Id.* at 72–73. While executing the search warrant, officers seized marijuana found in Marten's house. Marten filed a motion to suppress all the evidence resulting from the execution of the search warrant arguing, among other things, that the warrant was fatally overbroad because there was not probable cause to support a search of Marten's house, yard or outbuildings. *Id.* at 76.

¶ 37. The court concluded that the complaint established probable cause to believe that marijuana would be found in Marten's home. *Id.* at 75. The court declined to decide whether the warrant established probable cause to search the yard and outbuildings because "there [was] no evidence that these areas were ever searched" and no evidence was found in them. *Id.*

at 77. Noting that the severability rule applies to situations in which "a warrant's *description of the property to be seized* is overly broad" and "the *seizure* of items under an appropriately specific warrant was overly broad," the court concluded that the severability rule "applies equally where the *description of the premises to be searched* is overly broad." *Id.* at 77 (citing *Noll,* 116 Wis. 2d at 454–55; *Petrone,* 161 Wis. 2d at 548). Accordingly, the portion of the warrant authorizing a search of the yard and outbuildings was severed from the valid portion authorizing the search of Marten's home. The drugs were admissible as they were seized from Marten's home pursuant to the valid portion of the warrant. *Id.*

¶ 38. Similarly, the United States Court of Appeals for the Third Circuit has stated:   An overly broad warrant that authorizes searches for which there is no probable cause, "can be cured by redaction, that is, by 'striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment.' " *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57),* 307 F.3d 137, 149 (3d Cir. 2002) (quoting *United States v. Christine,* 687 F.2d 749, 754 (3d Cir. 1982)).

### 5. Application

¶ 39.   We conclude that the order authorizing the installation and monitoring of a GPS tracking device on Sveum's vehicle was a valid search warrant under the Fourth Amendment. First, the order was signed by a neutral and detached magistrate. Second, Ricksecker's

affidavit provided probable cause for the portion of the order authorizing law enforcement to "install, use, [and] maintain" a GPS tracking device on Sveum's vehicle and to subsequently "remove" such device. Assuming, arguendo, that the portions of the order granting law enforcement broader authority to search, i.e., authorization to search "any buildings and structures containing the vehicle," are invalid because the affidavit failed to demonstrate probable cause to search such areas, we sever those portions from the order. Finally, the order particularly described the object into which the GPS was to be placed, i.e., Sveum's vehicle; the circumstances that led agents to seek to install the GPS, i.e., evidence of Sveum's stalking activities; and the length of time for which GPS surveillance was requested, i.e., no more than 60 days. *See Karo,* 468 U.S. at 718.

¶ 40.  Sveum contends that because the State's only argument in the circuit court was that no search warrant was required because the officers' committed no search or seizure, "the [S]tate well may have waived the argument that the court order here was a search warrant." We exercise our discretion to reach this issue, rather than deem it waived. *See Umansky v. ABC Ins. Co.,* 2009 WI 82, ¶ 23 & n.17, 319 Wis. 2d 622, 769 N.W.2d 1 ("The rule of waiver is one of judicial administration and does not limit the power of an appellate court in a proper case to address issues not raised in the circuit court.") (citing *State v. Caban,* 210 Wis. 2d 597, 609, 563 N.W.2d 501 (1997)). Therefore, we turn to the merits of this issue.

¶ 41.  We first examine whether the order here represents "prior judicial authorization for a search [by] a neutral, disinterested magistrate." *Henderson,* 245 Wis. 2d 345, ¶ 19. We conclude that it does. The order,

397

signed by Judge Richard Callaway on April 22, 2003, authorized the Madison Police Department to install and monitor a GPS device on Sveum's vehicle. The officers attached the device after the order was issued. Accordingly, the order is prior judicial authorization from a neutral and detached magistrate.

¶ 42. Second, we examine whether Ricksecker "demonstrate[d] upon oath or affirmation probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense." *Id.*, ¶ 19 (internal quotations omitted). We conclude that it does.

¶ 43. Affording Judge Callaway's probable cause determination great deference, we conclude that he had a substantial basis for concluding that given all the facts and circumstances set forth in Ricksecker's ample and detailed affidavit, there was a fair probability that installing and monitoring a GPS tracking device on Sveum's vehicle would produce evidence of stalking. Accordingly, we sustain Judge Callaway's determination that the order was supported by probable cause authorizing law enforcement to "install, use, [and] maintain" a GPS tracking device on Sveum's vehicle and to subsequently "remove" such device.

¶ 44. Ricksecker's affidavit, sworn on "oath or affirmation," demonstrated that the GPS data sought probably would provide evidence of Sveum's stalking Johnson. *See id.*, ¶ 19; Wis. Stat. § 968.12(2). The affidavit established Ricksecker's significant training, experience and knowledge in investigating stalking cases and that such experience led her to believe that GPS tracking devices are "successful supplement[s] to visual surveillance" as it "lessens the risk of visual detection by the suspect" and "is generally considered more reliable" than attempted visual surveillance.

398

¶ 45. Ricksecker also averred, in significant detail, to her lengthy history investigating Sveum. She was aware of the facts of Sveum's two previous convictions for violating a domestic abuse order, both involving Johnson. She personally investigated Sveum's previous case that resulted in a conviction of stalking also involving Johnson. As such, Ricksecker was personally familiar with Sveum's criminal pattern of targeting Johnson as a victim.

¶ 46. The affiant averred that Johnson reported receiving nine hang-up phone calls between March 3, 2003, and April 12, 2003. Johnson's allegation was confirmed by TDS Metrocom phone records and the Dane County 911 Dispatch Center. The phone records indicated that each of the hang-up calls came from various pay phones in Dane County. Significantly, the affidavit established that the hang-up calls Johnson reported were consistent with Sveum's stalking behavior from his previous conviction, which was "based on hang-up calls received by Jamie Johnson at her residence."

¶ 47. The affiant established through investigation and Department of Transportation records the make, model, license plate number and VIN of Sveum's vehicle.

¶ 48. Finally, the affiant explained that the GPS device had limited battery power. Accordingly, it was necessary to periodically change the battery of the GPS device to maintain it for extended surveillance.

¶ 49. The foregoing evidence established a "fair probability" that Sveum was using his vehicle to stalk Johnson and that tracking the location of Sveum's vehicle by installing and maintaining a GPS tracking device would produce evidence of the crime of stalking. *See DeSmidt,* 155 Wis. 2d at 131.

¶ 50. Sveum argues that the order's description of the premises law enforcement may search is not supported by probable cause and therefore is impermissibly overbroad. Specifically, he argues that Ricksecker's affidavit failed to demonstrate probable cause to "surreptitiously enter and reenter the vehicle and any buildings and structures containing the vehicle or any premises on which the vehicle is located . . . including but not limited to private residence and other locations not open to visual surveillance," to "obtain and use a key to operate and move the vehicle" and to "open the engine compartment and trunk areas of the vehicle."[10]

¶ 51. Because "there is no evidence that these areas were ever searched, and it does not appear that any evidence was found in them," we assume, without deciding, that the portions of the warrant Sveum points to above are not supported by probable cause and therefore are impermissibly overbroad. *Marten,* 165 Wis. 2d at 77. The proper remedy for the partially defective order is to "strik[e] from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause." *$92,422.57,* 307 F.3d at 149 (internal quotations omitted). Accordingly, we strike the portions of the order that we assume, arguendo, are defective. However, the other portions of the order remain. *Noll,* 116 Wis. 2d at 445. As we concluded above, the portion of the order that authorized law enforcement to "install, use, [and] maintain" a GPS tracking device on Sveum's vehicle and to subsequently "remove" such device is valid. *See supra* ¶ 49.

---

[10] This argument was best articulated in Sveum's brief-in-chief submitted to the court of appeals. Brief of Defendant-Appellant at 2–4 ("The affidavit and request for the order here did not show that unlimited entries into the vehicle and any buildings containing the vehicle were necessary.").

¶ 52. Finally, we examine whether the order "particularly describe[d] the place to be searched." *Henderson,* 245 Wis. 2d 345, ¶ 19. We conclude that Ricksecker's affidavit meets the particularity requirements with respect to electronic tracking devices as explained in *Karo,* 468 U.S. 705. First, the affiant explained that Sveum's vehicle, identified by make, model, license plate and VIN, was the "object into which the [GPS device was] to be placed." *Id.* at 718. Second, the affiant described the "circumstances that led agents to wish to install the [GPS device]." *Id.* The affiant explained that Sveum had previously been convicted of stalking Johnson. Such conviction was "based on hang-up calls received by Jamie Johnson at her residence." It was further alleged that the hang-up calls ceased upon Sveum's incarceration, and commenced again after Sveum was released from incarceration. The hang-up calls were verified by TDS Metrocom phone records. It was these circumstances that led Ricksecker to believe that Sveum's vehicle was "being utilized in the commission of . . . stalking" and that "installation of a [GPS] tracking device on [Sveum's] vehicle in conjunction with the monitoring, maintenance and retrieval of information from that [GPS] tracking device will lead to evidence of [stalking]." Finally, Ricksecker requested authorization to monitor the GPS device "for a period of time not to exceed 60 days." The order generally reiterated such information. Accordingly, we conclude that such information "suffice[s] to permit issuance of a warrant authorizing [GPS] installation and surveillance" on Sveum's vehicle. *Id.*

## B. Reasonableness Clause

¶ 53. Even if a court determines that a search warrant is constitutionally valid, the manner in which the warrant was executed remains subject to judicial review. *See State v. Andrews,* 201 Wis. 2d 383, 390, 549 N.W.2d 210 (1996). "A search 'must be conducted reasonably and appropriately limited to the scope permitted by the warrant.' " *Id.* (quoting *Petrone,* 161 Wis. 2d at 542). "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by the warrant—subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.' " *Dalia,* 441 U.S. at 257.

¶ 54. "There is no formula for the determination of reasonableness." *Ker v. California,* 374 U.S. 23, 33 (1963) (internal citations omitted). Whether a search was reasonable depends on the particular circumstances of the case and requires a balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " *Henderson,* 245 Wis. 2d 345, ¶ 18 (quoting *United States v. Place,* 462 U.S. 696, 703 (1983) (further quotation omitted)). Constitutional reasonableness relates to the grounds for the search and seizure and to the circumstances surrounding the execution of the search. *Id.*

¶ 55. Whether a search was reasonably ordered and executed is further informed by the Wisconsin Statutes. For example, Wis. Stat. § 968.12(1) defines the parameters of a search warrant. Section 968.12 codifies

the Warrant Clause's requirements and provides part of the framework for a circuit court's action; § 968.12(1) provides:

> A search warrant is an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property. A judge shall issue a search warrant if probable cause is shown.

¶ 56.   Wisconsin Stat. § 968.12(1) establishes that to constitute a search warrant as described in the statute, the order must be signed by a judge (a neutral and detached magistrate), must particularly describe the place to be searched and the items to be seized and must be supported by probable cause. We concluded that the order here met each of these requirements. *See supra* Part III.A.5. An order meeting the parameters of a search warrant set out in this section is a statutorily authorized warrant, even though the document is entitled "order." Therefore, that the order in this case was not entitled, "search warrant," does not affect its validity because, as the statute clearly states, "[a] search warrant is an order." § 968.12(1).

¶ 57.   A violation of a Wisconsin statute relating to search warrants does not necessarily lead to the conclusion that a search that was conducted is unreasonable. *See, e.g., State v. Meier,* 60 Wis. 2d 452, 459–60, 210 N.W.2d 685 (1973) (concluding that any error as to the return of the search warrant violating Wis. Stat. § 968.17 did not prejudice the rights of the defendant and therefore did not affect the validity of the search).

Case law and Wis. Stat. § 968.22[11] provide that "evidence must not be suppressed for a mere statutory violation or a technical irregularity of search warrant procedure *unless* the violation or irregularity is material or the violation or irregularity has prejudiced the defendant or affected the defendant's substantial rights." *State v. Popenhagen,* 2008 WI 55, ¶ 126, 309 Wis. 2d 601, 749 N.W.2d 611 (Prosser, J., concurring). "Conversely, if a statutory violation or statutory irregularity of search warrant procedure is material or if the violation or irregularity has prejudiced the defendant or affected the defendant's substantial rights, the court has implicit, if not explicit, statutory authority to suppress the tainted evidence." *Id.* (citing § 968.22).

¶ 58. We conclude that in light of the facts and circumstances in this case, the order constitutes a valid search warrant.[12] It was reasonably executed because the search was "conducted reasonably and [was] appropriately limited to the scope permitted by the warrant." *Andrews,* 201 Wis. 2d at 390 (internal quotation omitted). Further, violations of the Wisconsin statutes gov-

[11] Wisconsin Stat. § 968.22 provides: "No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant."

[12] Even if we had not concluded that the circuit court's order constitutes a valid search warrant, a strong argument supportive of the good faith of law enforcement could have been made here. This is so because the process used to obtain the order and the detailed circuit court order itself gave law enforcement an objectively reasonable basis to conclude that they had lawful authority to proceed as they did. *See Eason,* 245 Wis. 2d 206, ¶ 74. Good faith was not argued because it has been the State's position that the actions of law enforcement did not constitute a search or a seizure, an issue that we do not address.

erning search warrants were mere "technical irregulari-
ties," Wis. Stat. § 968.22, that did not render the search
unreasonable. Accordingly, the data seized from the
GPS device was not subject to suppression.

¶ 59.   The officers entered the driveway to install
the GPS device in Sveum's vehicle. Installation was
achieved simply, by attaching the device with magnets
and tape to the vehicle's undercarriage. Maintenance of
the GPS device included replacing the device twice, due
to its limited battery life. Both replacement devices were
installed in the same manner as the first. After monitor-
ing Sveum's vehicle for 35 days, the officers removed the
GPS device. Execution in this manner stayed well within
the confines of the authority granted by the order, which
authorized law enforcement to "install, use, [and] main-
tain" a GPS tracking device on Sveum's vehicle and to
subsequently "remove" such device.

¶ 60.   Additionally, "[t]here is no indication that
[law enforcement's] intrusion went beyond what was
necessary to install and remove the equipment." *Dalia,*
441 U.S. at 258 n.20. Indeed, the officers did not enter
any building, including Sveum's home, nor did they
access the passenger compartment or the trunk of the
vehicle during installation, maintenance and removal of
the GPS device. Additionally, the officers replaced the
GPS devices only as was necessary and in the same
minimally intrusive manner as the initial installation.

¶ 61.   Sveum raises several arguments, which he
contends demonstrate that the order was not reasonably
executed. Specifically, Sveum argues that the officers
violated his Fourth Amendment rights by:   (1) failing to
provide him notice of the order issued by the circuit
court prior to executing it; (2) performing a search that

exceeded the scope of the order; and (3) failing to comply with the statutory return and inventory procedures. We disagree.

¶ 62. The Supreme Court has specifically noted the "absence of a constitutional requirement that the warrant be exhibited at the outset of the search." *United States v. Grubbs,* 547 U.S. 90, 99 (2006) (internal quotation omitted); *see also Groh v. Ramirez,* 540 U.S. 551, 562 n.5 (2004). The Groh Court explained the reasoning for the absence of such a requirement. It explained: "Quite obviously, in some circumstances—a surreptitious search by means of a wiretap, for example, or the search of empty or abandoned premises—it will be impracticable or imprudent for the officers to show the warrant in advance." *Groh,* 540 U.S. at 562 n.5.

¶ 63. *Groh*'s reasoning squarely applies here. Quite obviously, installing and monitoring the GPS tracking device without Sveum's knowledge was crucial to obtaining evidence demonstrating Sveum was using his vehicle to stalk Johnson.

¶ 64. As stated, Sveum also argues that the officers search exceeded the scope of the order. He argues this is so because each day the officers monitored Sveum's vehicle using the GPS device constituted a separate intrusion requiring a new search warrant. Again, we disagree.

¶ 65. In *United States v. Squillacote,* 221 F.3d 542 (4th Cir. 2000), the United States Court of Appeals for the Fourth Circuit rejected an argument similar to Sveum's. In *Squillacote,* pursuant to an investigation of suspected "espionage-related activities," a search warrant was issued authorizing the search of the defendants' home for a period of not more than 10 days. *Id.* at 557, 554. The search extended over six days. *Id.* at 557. The defendants argued that the evidence seized pursu-

ant to the warrant "must [] be suppressed because the government did not obtain a new warrant for each successive day of searching." *Id.*

¶ 66.  The court rejected this argument reasoning that due to the complex, ongoing nature of the espionage-related activities and the nature of the evidence sought "the search was necessarily extensive and exhaustive." *Id.* Because "the search could not have been completed in a single day" and because it viewed "the subsequent entries [] not [as] separate searches requiring separate warrants, but instead [as] [] reasonable continuations of the original search" the government was not required to obtain additional warrants for each day the search continued. *Id.*

¶ 67.  We similarly conclude that the complex, ongoing nature of stalking justified the 35 days of GPS surveillance on a single search warrant. *See* Wis. Stat. § 940.32(1)(a), (2)(c) (2001–02) (stalking requires, inter alia, a "course of conduct," which is "a series of 2 or more acts carried out over time . . . that show a continuity of purpose," directed at a specific person inducing fear of bodily injury or death); Wis. Stat. § 940.32(3)(b) (2001–02) (requiring a violation of sub. (2) and a previous stalking conviction of the same victim within seven years for the commission of aggravated stalking). Evidence sufficient to demonstrate Sveum's stalking required, inter alia, data demonstrating Sveum engaged in "a series of 2 or more acts carried out over time," inducing Johnson to fear bodily injury or death. *See* § 940.32(1)(a), (2)(c). A search obtaining this type of evidence could not have been completed in a single day. Moreover, the daily, continuous monitoring of the GPS device on Sveum's vehicle "were not separate searches requiring separate warrants, but instead were simply

407

reasonable continuations of the original search." *Squillacote*, 221 F.3d at 557. Accordingly, the officers were not required to obtain additional search warrants for each day the GPS monitoring continued.

¶ 68. Wisconsin Stat. § 968.15 requires a search warrant to be "executed and returned not more than 5 days after the date of issuance." Wisconsin Stat. § 968.17(1) requires that a search warrant be returned to the clerk of court "within 48 hours after execution" and that such return "be accompanied by a written inventory of any property taken." The requirement of a prompt return and inventory " 'safeguard[s] [] the property rights of individuals' " by ensuring that defendants are not permanently deprived of having access to and control over their property seized pursuant to a search warrant. *See Meier*, 60 Wis. 2d at 459 (quoting 68 Am Jur. 2d *Searches and Seizures* § 83, at 738).

■

¶ 69. The order in this case was not returned along with a written inventory to the circuit court. *See* Wis. Stat. §§ 968.15 & 968.17. Law enforcement's failure to return the order and inventory within the confines of §§ 968.15 and 968.17 do not render the execution of the order unreasonable. The timely return of a warrant is "a ministerial duty which [does] not affect the validity of the search absent prejudice to the defendant." *State v. Elam*, 68 Wis. 2d 614, 620, 229 N.W.2d 664 (1975) (citing *Meier*, 60 Wis. 2d 452); *accord* 2 Wayne R. LaFave, *Search and Seizure* § 4.12(c) (4th ed. 2004) ("[T]he 'overwhelming weight of authority' is to the effect that required warrant return procedures are ministerial and that failure to comply with them is not a ground for voiding an otherwise valid search.") (quoting *United States v. Kennedy*, 457 F.2d 63, 67 (10th Cir. 1972)).

¶ 70.   Sveum has failed to demonstrate that he was prejudiced by law enforcement's failure to comply with the procedural return statutes. Because the officers in this case did not seize any tangible evidence, but instead intangible electronic data, there was no property to be returned to Sveum and, therefore, no property to safeguard prior to its return to Sveum. Moreover, at all times Sveum had access to and control over the location of his vehicle.

¶ 71.   Similarly, we are not persuaded that Sveum's substantial rights were violated by the officers' failure to execute and return the warrant within 5 days after the date of issuance. *See* Wis. Stat. § 968.15. We note that under the Federal Rules of Criminal Procedure, which explicitly govern warrants for tracking devices, officers may use a tracking device for a period not more than "45 days from the date the warrant was issued." Fed. R. Crim. P. 41(e)(2)(C).[13] As the United States Supreme Court has explained, "Federal Rule of Criminal Procedure 41 [] reflects the Fourth Amendment's policy against unreasonable searches and seizures." *Zurcher v. Stanford Daily,* 436 U.S. 547, 558 (1978) (internal quotation and brackets omitted). Here, the officers removed the GPS tracking device 35 days from the date the order was issued. As we have explained, the officers' use of the GPS device for 35 days was reasonable and, therefore, the lack of a return to the circuit court in five days did not violate Sveum's substantial rights.

¶ 72.   Accordingly, because we conclude that the failure to comply with the requirements of Wis. Stat. §§ 968.15 and 968.17 did not prejudice Sveum's sub-

---

[13] The Wisconsin statutes do not contain a similar provision governing tracking-device warrants.

stantial rights, the effect of the error is cabined by Wis. Stat. § 968.22. Section 968.22 provides that unless an error in the warrant affects a substantial right of the defendant, the error does not permit the suppression of evidence. Therefore, suppression of the evidence obtained here is not permissible. *See Popenhagen*, 309 Wis. 2d 601, ¶ 126 (Prosser, J., concurring); § 968.22.

## IV. CONCLUSION

¶ 73.   Sveum and the State have briefed two issues for purposes of our review:   (1) whether the installation of a GPS tracking device to Sveum's car while his car was parked in the driveway of his home and the subsequent electronic monitoring of Sveum's car using the GPS constituted a search or seizure within the meaning of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution; and (2) whether the court order authorizing the installation and monitoring of a GPS tracking device on Sveum's vehicle constituted a valid warrant and, if so, whether the police reasonably executed the warrant.

¶ 74.   We elect not to resolve the first issue, and assume, without deciding, that a search or seizure occurred in this case that required authorization by a warrant. We therefore decide only the second issue, concluding that the order authorizing law enforcement to install and monitor a GPS tracking device on Sveum's vehicle constituted a valid warrant and that the officers' execution of the warrant was reasonable. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 75. N. PATRICK CROOKS, J. (*concurring*). I join the majority opinion and agree with its conclusions that the order authorizing police officers to attach and monitor the Global Positioning System (GPS) tracking device to Sveum's vehicle was a valid warrant, and that the execution of that warrant was reasonable. I write separately to emphasize two points of concern.

¶ 76.  First, I believe that the scope of applicability of this case should be limited to similar factual situations, specifically, those based on a valid warrant in which the challenged search involves a GPS device that an officer attaches to a vehicle in order to collect data from public roadways. Given the increased prevalence of GPS devices used in day-to-day activities and the speed with which technological advances expand the ability and ways in which a person or object can be tracked, I believe that expanding this holding to other uses or other devices could have the potential to weaken protections guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.

¶ 77.  Second, I echo my colleagues' requests, *see* Justice Ziegler's concurrence, ¶¶ 79, 84; Chief Justice Abrahamson's dissent, ¶ 126, that the Wisconsin legislature weigh in on this issue and enact legislation governing the proper procedures for issuing a warrant, executing that warrant, and other procedural concerns related to police searches using GPS, such as time limits and return on the warrant requirements. *See* Wis. Stat. § 968.17. The Federal Rules of Criminal Procedure currently set forth parameters for warrants authorizing the installation and monitoring of GPS devices. *See* Fed. R. Crim. P. 41(e)(2)(C).[1] Such direction from the

---

[1] Rule 41(e)(2)(C) provides:

Wisconsin legislature would be appropriate and well within its province, considering that it has previously set forth procedures for authorizing and executing similar electronic searches, such as those involving the interception of wire, electronic, and oral communications, *see* Wis. Stat. §§ 968.28–968.31, and the use of a pen register or a trap and trace device, *see* Wis. Stat. §§ 968.34–968.37.

¶ 78. For the foregoing reasons, I respectfully concur.

¶ 79. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I join the majority's conclusion that the order authorizing law enforcement to install and monitor a Global Positioning System (GPS) tracking device on Sveum's vehicle constituted a valid warrant and that law enforcement's execution of the warrant was reasonable. Majority op., ¶ 3. I write separately to clarify that in this case, the police officers appropriately sought judicial approval because they intended to install or monitor the tracking device in private areas. Given the

---

(C) Warrant for a Tracking Device. A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used. The time must not exceed 45 days from the date the warrant was issued. The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each. The warrant must command the officer to:

(i) complete any installation authorized by the warrant within a specified time no longer than 10 calendar days;

(ii) perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and

(iii) return the warrant to the judge designated in the warrant.

Fed. R. Crim. P. 41(e)(2)(C).

complexity and sophistication of GPS tracking, *see, e.g., id.,* ¶¶ 61–70, I believe that the Wisconsin legislature should consider expressly requiring court authorization of the installation and monitoring of such tracking devices and should consider legislatively setting appropriate parameters and standards for their use. Said legislative action would be consistent with analogous Wisconsin statutes that currently require court authorization of the interception of wire, electronic, or oral communications, *see* Wis. Stat. §§ 968.28–968.31, and the installation and use of a pen register or a trap and trace device, *see* Wis. Stat. §§ 968.34–968.37. *See also* 18 U.S.C. § 3117 (2009); Fed. R. Crim. P. 41. However, pursuant to *United States v. Knotts,* 460 U.S. 276 (1983), it remains my position that installing and monitoring a GPS tracking device on a vehicle in a public area does not constitute a search or seizure within the meaning of the Fourth Amendment. *See also United States v. Garcia,* 474 F.3d 994 (7th Cir. 2007).

¶ 80. In this case, the police officers appropriately sought judicial approval because they intended to install or monitor the tracking device in private areas. That point is made clear by Detective Mary Ricksecker's affidavit and request for authorization to place and monitor the GPS tracking device on Sveum's vehicle. She averred in relevant part:

> [I]n order to effectively conduct the long term surveillance of the Target Vehicle, your affiant or assistant law enforcement personnel, may have to enter the premises located at 6685 County Trunk K, Iowa County, Wisconsin or 2426 Valley Street, Cross Plains, Dane County, Wisconsin,[1] for the purpose of installing, monitoring,

---

[1] The record reveals that these addresses are the residences of Sveum's sister and mother, respectively.

maintaining and retrieving the aforementioned Global Positioning System (GPS) tracking device.

. . . .

. . . [Y]our affiant is often required to obtain a key to operate the vehicle for temporary times and move the vehicle to a secure location to install the device and to open both the engine compartment and the trunk area of the vehicle for installation. Your affiant requests permission to do the above acts in order to secretly install the device.

Your affiant is aware that persons involved in criminal activities or conspiracies maintain the means and fruits of their violations, often in remote locations including garages, homes and storage sheds. . . .

. . . .

It is likely that the vehicle your affiant wishes to monitor will be taken into private as well as public places[;] therefore your affiant respectfully requests the court[']s permission to install and monitor the tracking device inside such private and public areas and the affiant requests permission to obtain a key to operate the motor vehicle, if necessary, and requests permission to use the same methods to retrieve the device. . . .

Accordingly, it is clear from Detective Ricksecker's affidavit that law enforcement intended to install the GPS tracking device on Sveum's vehicle by entering a private residence and operating the vehicle and intended to track the vehicle inside private locations. Indeed, the circuit court's order provides that "[t]his matter came before the court at the request of Detective Mary Ricksecker to place and monitor an electronic tracking device on a vehicle that may enter private areas." Because Detective Ricksecker and her accompanying police officers intended to install or monitor the

tracking device on Sveum's vehicle in private areas, they appropriately sought judicial approval. Absent a warrant or exigent circumstances, the monitoring of a tracking device in a private area, a location not open to visual surveillance, violates the Fourth Amendment rights of those who have a justifiable interest in the privacy of that area. *United States v. Karo*, 468 U.S. 705, 714–15 (1984). "At the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." *Id.* at 714.

¶ 81.   Federal judges have express authorization to issue warrants for the installation and use of tracking devices. *See* 18 U.S.C. § 3117; Fed. R. Crim. P. 41(b)(4). The 2006 amendments to Federal Rule of Criminal Procedure 41 "reflect[] the view that if the officers intend to install or use the device in a constitutionally protected area, they must obtain judicial approval to do so." Fed. R. Crim. P. 41(b) advisory committee's note. Upon receipt of an affidavit or other information, an authorized federal judge "must issue the warrant if there is probable cause . . . to install and use a tracking device." Fed. R. Crim. P. 41(d)(1). Importantly, Rule 41's requirements for tracking-device warrants reflect the complexity and nuances of GPS tracking. *See, e.g.*, Fed. R. Crim. P. 41(e)(2)(C) (providing that a tracking-device warrant must "specify a reasonable length of time that the device may be used," not to exceed 45 days from the date the warrant was issued, and must command the officer to complete installation "within a specified time no longer than 10 calendar days"); 41(f)(2) (providing that the executing officer must return the warrant to the designated judge and

serve a copy on the person who was tracked or whose property was tracked "[w]ithin 10 calendar days after the use of the tracking device has ended").

¶ 82.   Similar to Federal Rule of Criminal Procedure 41 and consistent with orders authorizing the interception of wire, electronic, or oral communications, *see* Wis. Stat. §§ 968.28–968.31, and the installation and use of a pen register or a trap and trace device, *see* Wis. Stat. §§ 968.34–968.37, the Wisconsin legislature should consider expressly providing for court orders authorizing the installation and monitoring of a tracking device and should consider setting appropriate parameters. Express authorization and guidance would alleviate the problems that arise when evaluating tracking-device warrants under our general statutory scheme on search warrants. *See* majority op., ¶¶ 61–70.

¶ 83.   Again, in this case, the police officers appropriately sought judicial approval because they intended to install or monitor the tracking device on Sveum's vehicle in private areas. Consequently, I join the majority's conclusion that the order authorizing law enforcement to install and monitor a GPS tracking device on Sveum's vehicle constituted a valid warrant and that law enforcement's execution of the warrant was reasonable. However, it remains my position that installing and monitoring a GPS tracking device on a vehicle in a public area does not constitute a search or seizure within the meaning of the Fourth Amendment.[2] Therefore, in such instances, a search warrant

_____

[2] Numerous other courts have similarly held. *See, e.g., United States v. Garcia,* 474 F.3d 994, 996–97 (7th Cir. 2007) (holding that the Fourth Amendment does not limit the use of new technology so long as the technology is readily available and merely a substitute for an activity that is "unequivocally not a search" like tracking a vehicle on public highways); *United*

—while certainly desirable—may not be necessary. *See* Fed. R. Crim. P. 41(b) advisory committee's note (providing that if law enforcement "intend[s] to install and use the device without implicating any Fourth Amendment rights, there is no need to obtain the warrant"). Placing a GPS tracking device on the undercarriage of a vehicle while the vehicle is parked in a public area does not constitute a seizure. *Garcia,* 474 F.3d at 996 (concluding that law enforcement "did not 'seize' the car

*States v. McIver,* 186 F.3d 1119, 1126–27 (9th Cir. 1999) (concluding that the act of placing a magnetized tracking device on the defendant's vehicle did not constitute a search and seizure because he had no reasonable expectation of privacy in the undercarriage of his vehicle, and the device did not meaningfully interfere with any possessory interest); *United States v. Jones,* 451 F. Supp. 2d 71, 88 (D.D.C. 2006) (deeming admissible all data obtained from a GPS tracking device placed on the defendant's vehicle, except for the data obtained while the vehicle was parked in a private garage); *United States v. Moran,* 349 F. Supp. 2d 425, 467 (N.D.N.Y. 2005) (concluding that the Fourth Amendment was not implicated by law enforcement's attachment and use of a GPS tracking device on the defendant's vehicle because he "had no expectation of privacy in the whereabouts of his vehicle on a public roadway"); *Osborn v. Nevada,* 44 P.3d 523, 526 (2002) (holding that law enforcement's warrantless attachment of an electronic monitoring device to the bumper of the defendant's vehicle did not constitute an unreasonable search or seizure under the Nevada Constitution because the defendant "had neither a subjective nor an objective expectation of privacy in the bumper of his vehicle"); *Stone v. Maryland,* 941 A.2d 1238, 1250 (2008) (describing the GPS tracking device attached to the appellant's vehicle as "simply the next generation of tracking science and technology from the radio transmitter 'beeper' in *Knotts*" and concluding that its use did not implicate the Fourth Amendment because "[t]he appellant and his wife did not have a reasonable expectation of privacy in their location as they traveled on public thoroughfares").

in any intelligible sense of the word" because "[t]he device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by passengers or packages, [and] did not even alter the car's appearance"). Moreover, tracking a vehicle in public areas does not constitute a search, *Knotts,* 460 U.S. at 281–85, because "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another," *id.* at 281. For that same reason, a person driving in a vehicle has no reasonable expectation of privacy in the fact that he or she arrived on private property after leaving a public roadway. *Id.* at 281–82. The driver voluntarily conveys such movement to whoever wishes to observe. The Fourth Amendment does not prohibit law enforcement officers from augmenting with appropriate technology their natural ability to conduct visual surveillance. *See id.* at 282.

¶ 84. In summary, I write separately to clarify that in this case, the police officers appropriately sought judicial approval because they intended to install or monitor the tracking device in private areas. Similar to Federal Rule of Criminal Procedure 41 and consistent with orders authorizing the interception of wire, electronic, or oral communications, *see* Wis. Stat. §§ 968.28–968.31, and the installation and use of a pen register or a trap and trace device, *see* Wis. Stat. §§ 968.34–968.37, I respectfully invite the Wisconsin legislature to consider expressly providing for court orders authorizing the installation and monitoring of a tracking device and to set appropriate parameters. However, it remains my position that installing and monitoring a GPS tracking device on a vehicle in a

public area does not constitute a search or seizure within the meaning of the Fourth Amendment.

¶ 85. For the foregoing reasons, I respectfully concur.

¶ 86. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I assume, as does the majority opinion, that a search or seizure occurred in the present case that required authorization by a warrant.

¶ 87. The majority therefore must determine that the circuit court Order authorizing the installation of the GPS in the present case "constituted" a valid search warrant under Wisconsin law. Therein lies the problem. The Order does not meet the statutory requirements of a Warrant. So, the next question arises: Construing the Order as a warrant, are the statutory defects in the Order "technical irregularities," which are excused under Wis. Stat. § 968.22,[1] or do the defects render the Order, construed as a warrant, void from the beginning, that is, does this case present a void ab initio warrant?

¶ 88. The legislature has given us a clear, unambiguous answer.

¶ 89. Wisconsin Stat. § 968.15 states that a search warrant **must** be executed and returned not more than five days after the date of issuance and that if it is **not executed within this time frame, the warrant "shall be void** and shall be returned to the judge issuing it." (Emphasis added.)

¶ 90. The Order, as executed, did not meet this clear statutory requirement. This Order/Warrant purported to authorize the removal of the GPS "as soon as

---

[1] Wisconsin Stat. § 968.22 provides:

No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant.

419

practicable after the objectives of the surveillance are accomplished and not later than 60 days from the date the order is signed." Thus, the Order on its face (and as it was executed) violates the mandatory warrant requirements in Wis. Stat. § 968.15. The legislature declares such a warrant void.

¶ 91. The Order is therefore void as a warrant. The legislature expressly treats the failure to comply with the five-day execution period as a fatal flaw. In other words, the legislature has explicitly and pre-emptively instructed judges and courts not to treat the five-day execution period as a "technical irregularity" that can be forgiven under Wis. Stat. § 968.22. Section 968.15 provides as follows:

> § 968.15 **Search Warrants; when executable. (1)** A search warrant must be executed and returned not more than 5 days after the date of issuance.
>
> (2) **Any search warrant not executed within the time provided in sub. (1) shall be void** and shall be returned to the judge issuing it. (Emphasis added.)[2]

¶ 92. The Order's 60–day authorization period is irreconcilable with the statutory five-day execution and return requirement. The Order was executed over the

---

[2] The Judicial Council's 1969 note to this provision appears in 1969 Wis. Laws ch. 255. It states as follows:

It is believed that there should be some reasonable period in which a warrant should be executed and returned. Experience teaches that normally search warrants have little effect if they are not promptly served. They should not be held by an officer and served at his whim. Various states have adopted times different from the federal requirement in F.R. Cr. P. 41 (d) which has a 10–day limitation. The Council, after consultation with law enforcement authorities, felt 5 days was a reasonable period.

course of the 35 days that the GPS was maintained on the vehicle and no return was ever made to the judge who issued the Order.

¶ 93.   The law enforcement officer seeking the Order knew that the Order did not have statutory support. In her affidavit and request for authorization to install the GPS, Detective Ricksecker averred that the State of Wisconsin "has no explicit statute under Chapter 968 that addresses the issue of installing tracking devices on private property." The circuit court signing the Order likewise knew that the Order did not satisfy the statutory requirements of a warrant. The circuit court judge characterized the Order as "most *akin* to a search warrant" (emphasis added), thus acknowledging that the judge knew the Order was not, in fact or law, a search warrant.[3] The majority disregards not only the statutory warrant requirements but also the candor, legal reasoning, and common sense of the detective and circuit judge who crafted this Order.

¶ 94.   The legislature has declared the Order/ Warrant in the present case void. What part of the word "void" doesn't the majority understand? Why doesn't the majority opinion follow the legislature's directive?

¶ 95.   When a warrant is void ab initio, the evidence must be suppressed. "[S]uppressing evidence obtained as a result of [an] unauthorized, defective warrant is necessary to preserve the integrity of the

---

[3] At the circuit court, the State also argued that the Order did not meet the statutory requirements of a warrant.

These facts undermine any "good faith" argument because both the police and the issuing judge recognized they were operating outside the statutory warrant authorization. *Contra* majority op., ¶ 58 n.13.

judicial process." *State v. Hess,* 2010 WI 82, ¶ 3, 327 Wis. 2d 524, 785 N.W.2d 568.

¶ 96. The majority's decision today may have far-reaching consequences extending well beyond GPS surveillance. If warrant requirements that are mandatory in the statutes are rendered optional in reality; if fatal flaws are treated as mere technical irregularities; if clear statutory language is ignored with regard to GPS tracking, what is to prevent the proliferation of similar court orders which, under the guise of a "warrant" but without statutory basis or limitation, authorize a sweeping search of a home or an office without affording the protections expressly laid out by the legislature? The majority's rationale offers no limitation on what searches may be authorized outside the statutory provisions. The majority offers no answer to how such authorizations might be checked.

¶ 97. I could end this dissent right here. I address the remaining arguments to resolve lingering doubt, if any, about the validity of this Order if treated as a warrant, and because a contrast to the legal authorization for warrants and other surveillance orders highlights the lack of compliance with any authorizing law for the GPS tracking Order in the present case.

¶ 98. The Order at issue does not meet the constitutional or statutory requirements for a search warrant.

¶ 99. I agree with Sveum that "the Fourth Amendment makes clear that mere probable cause plus a judge's signature do not a warrant make."[4] Although the affidavit demonstrated probable cause, the adequacy of the probable cause showing is not without doubts because of the nature of the GPS device.

---

[4] Reply Brief of Defendant-Appellant-Petitioner at 10.

¶ 100. The Order authorized the police to "place *an* electronic tracking device" onto Sveum's vehicle (located on the curtilage) and allowed the police to "enter and reenter the vehicle ... to install, use, maintain and conduct surveillance and monitoring ... of *a* mobile electronic tracking device." However, police did not install "*a* device"; they installed three GPS devices over the course of the surveillance. Rather than merely replacing the battery every 14 to 21 days, the police chose to remove and replace the whole device. Thus, the officers invaded Sveum's vehicle three distinct times, whereas the Order, pursuant to a single showing of probable cause, appears only to have authorized one such invasion.[5]

---

[5] In invalidating a New York eavesdropping statute under the Fourth Amendment, the United States Supreme Court stated that statutory "authorization of eavesdropping for a two-month period is the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause." *Berger v. New York*, 388 U.S. 41, 59 (1967). The authorization of GPS tracking for 60 days on a single showing of probable cause suffers the same infirmity.

The GPS device was initially installed on April 23, 2003; the device was replaced approximately two weeks later. The collected GPS data revealed incriminating evidence from April 25, 2003 and April 26, 2003, dates before the device was first replaced. That evidence should have established that "the objectives of the surveillance [were] accomplished." By the Order's own terms, police were then obligated to remove the device "as soon as practicable." In fact, police replaced the device another time after this showing. The repeat installations continuing to collect data well beyond that time appear to have been unreasonable continuations of the original search under the terms of the Order itself. Incriminating evidence sufficient to demonstrate Sveum's stalking had already been obtained and the objectives of the surveillance accomplished.

423

¶ 101. With regard to other statutory defects, I will examine various statutory provisions. I begin with Wisconsin Stat. § 968.10, which authorizes a search of a person, object or place and a seizure when the search is conducted as follows:

    (1)   Incident to a lawful arrest;

    (2)   With consent;

    (3)   Pursuant to a valid search warrant;

    (4)   With the authority and within the scope of a right of lawful inspection;

    (5)   Pursuant to a search during an authorized temporary questioning as provided in s. 968.25; or

    (6)   As otherwise authorized by law.

¶ 102. Subsections (1), (2), (4), and (5) are inapplicable here. The search in the present case is valid only if the Order is a "valid search warrant" (under sub. (3) above) or is "otherwise authorized by law" (under sub. (6) above). The Order in the present case does not fit within either sub. (3) or sub. (6).

¶ 103. First examining Wis. Stat. § 968.12(3), the Order is not a "valid search warrant" because it does not fit within the definition of "search warrant" found in Wis. Stat. § 968.12(1).

¶ 104. A search warrant is "an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property." As a threshold matter, the Order in the present case was signed by a judge; it did direct a law enforcement officer to act. But the act directed was not, in the words of the statute, "to conduct

a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property." Installing the GPS does not fit within a search of a designated person, a designated object, or a designated place.[6] Even if one construes the Order as targeting a search of a designated object or place, it was not "for the purposing of seizing designated property"[7] unless the data information fits within Wis. Stat. § 968.13(1)(c).

---

[6] The majority unnecessarily complicates the issue by declining to consider the Order in its entirety and striking those portions that authorize law enforcement officers to, among other things, "surreptitiously enter and reenter· the vehicle and any buildings and structures containing the vehicle or any premises on which the vehicle is located . . . ." *See* majority op., ¶ 50. The majority so concludes because "there is no evidence that these areas were ever searched, and it does not appear that any evidence was found in them." Majority op., ¶ 51. The majority does not pause to consider whether the stricken portions were supported by probable cause. *Id.*

This reasoning also ignores the fact that for police to attach the GPS device to Sveum's vehicle, they entered the premises on which the vehicle was located. The majority treats as severed the only language of the order that appears to have authorized the officers to "surreptitiously enter and reenter . . . [the] premises" at 2426 Valley Road, Cross Plains, where Sveum's vehicle was located, to install the GPS devices. It follows that when police did so, they were acting outside the authorization of the Order as the majority opinion now reads the Order.

By striking this portion of the Order, the majority renders the Order effectively useless. Yet, it somehow still maintains that the portion of the Order that authorized law enforcement officers to install, use, and maintain a GPS tracking device remains valid, and that the evidence obtained under this order need not be suppressed. *See* majority op., ¶ 49. The majority's reasoning seems internally inconsistent.

[7] The relevant "property subject to seizure" is set forth in

¶ 105. Furthermore, the Order/Warrant did not comply with Wis. Stat. § 968.17(1), which provides that the "return of the search warrant shall be made within 48 hours after execution to the clerk designated in the warrant." Under *State v. Meier*, 60 Wis. 2d 452, 459, 210 N.W.2d 685 (1973), *"failure of an officer to make return* of a search warrant [within the statutory period of 48 hours] properly issued and served will not invalidate

Wis. Stat. § 968.13. GPS tracking would have to be fit into § 968.13(1)(c):

968.13 Search warrant; property subject to seizure.

(1) A search warrant may authorize the seizure of the following:

(a) Contraband, which includes without limitation because of enumeration lottery tickets, gambling machines or other gambling devices, lewd, obscene or indecent written matter, pictures, sound recordings or motion picture films, forged money or written instruments and the tools, dies, machines or materials for making them, and controlled substances, as defined in s. 961.01(4), and controlled substance analogs, as defined in s. 961.01(4m), and the implements for smoking or injecting them. Gambling machines or other gambling devices possessed by a shipbuilding business that complies with s. 945.095 are not subject to this section.

(b) Anything which is the fruit of or has been used in the commission of any crime.

(c) Anything other than documents which may constitute evidence of any crime.

(d) Documents which may constitute evidence of any crime, if probable cause is shown that the documents are under the control of a person who is reasonably suspected to be concerned in the commission of that crime under s. 939.05(2).

(2) In this section, "documents" includes, but is not limited to, books, papers, records, recordings, tapes, photographs, films or computer or electronic data.

the search warrant, or a search and seizure made thereunder, even where the statute requires the return within a certain time . . . " (emphasis added). However, a court order that does not make any provisions for such a return is not a "search warrant properly issued," as it fails to meet the statutory requirement. See Wis. Stat. § 968.23 for the illustrative form of a search warrant, including the command that the law enforcement officer return the warrant within 48 hours. The return must be "accompanied by a written inventory of any property taken," which in the present case would amount to the data collected by the GPS tracking device.

¶ 106. The Order does not satisfy these warrant requirements. No clerk was designated to whom the return was to be made 48 hours after execution. *See* Wis. Stat. §§ 968.17(2), .23. There is no record of a return to a clerk or to the court.

¶ 107. These failures violate the terms of Wis. Stat. §§ 968.17(2) and 968.23 and undermine the statute's intended effect. Absent compliance with return provisions, the police were implicitly granted unchecked discretion in the use of the GPS data after it was obtained. This practice undermines the statutory provision for judicial supervision, which is the interest protected by the statutory return requirements and which guards against potential abuses of police authority.[8] Violation of this provision runs afoul of clear statutory requirements and of legislative purpose.

¶ 108. Because the Order is not, in my opinion, a warrant, the statutory "receipt" requirement under

---

[8] The legislative history reveals that the return provision is "for the protection of both the party whose property was seized and the officer making the seizure." Judicial Council Note to Wis. Laws of 1969, ch. 255. *See also State v. Meier,* 60 Wis. 2d 452, 459, 210 N.W.2d 685 (1973).

Wis. Stat. § 968.18 was violated. That section provides that "[a]ny law enforcement officer seizing any items without a search warrant shall give a receipt as soon as practicable to the person from whose possession they are taken."[9] No such receipt was given to Sveum.

¶ 109.   These numerous failures to comply with statutory warrant requirements are fatal to the majority's contention that the Order "constituted" a warrant under the requirements of the law. Although Wis. Stat. § 968.22 provides that "[n]o evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant," the statutory violations that I have enumerated were not mere "technical irregularities." Rather, they were significant substantive departures from the statutory mandates that were designed to protect the privacy interests of the subject of a search warrant. Virtually all of the time limitations and provisions for judicial documentation and notice provided by the statute were brushed aside by the provisions of the Order here, which purported to give police unfettered discretionary surveillance authorization for up to 60 days. It cannot credibly be argued that Sveum's substantial rights were not affected as a result.

¶ 110.   Finally, even if one could argue that each of these statutory defects is by itself a technicality, their cumulative effect affects the substantial rights of the defendant. The numerous violations of the statutes governing warrants demonstrate that this Order just

_____

[9] Sveum argues, and I agree, that this requirement was not met here. However, "[f]ailure to give such receipt shall not render the evidence seized inadmissible upon a trial." Wis. Stat. § 968.18.

doesn't fit the statutory mandates of a warrant.[10] Because the Order violates the statutory requirements of a warrant and thus cannot constitute a warrant, any evidence obtained by the Order should be suppressed.

¶ 111. Suppression is necessary "to achieve the objectives of the statute . . . ." *See State v. Popenhagen*, 2008 WI 55, ¶ 62, 309 Wis. 2d 601, 749 N.W.2d 611.

¶ 112. *Popenhagen* involved a subpoena that directed the production of documents; the subpoena violated Wis. Stat. § 968.135. The court concluded that because the subpoena contravened the statute, the evidence would be suppressed. *Popenhagen,* 309 Wis. 2d 601, ¶ 62. Similarly, in the present case, the evidence obtained in violation of the warrant statutes should be suppressed in order to achieve the objectives of the statutes and to discourage courts and law enforcement from creatively evading the warrant requirements set forth by the legislature by justifying searches and surveillance activities under ad hoc judicially crafted rules and requirements.

¶ 113. Law enforcement did nothing malicious or unreasonable here. The investigating detective took a responsible, desirable course in the present case. Law enforcement went to a neutral magistrate for authority. A well-grounded supporting affidavit was submitted to the judge, admitting that there was no statutory authority for a GPS warrant.

---

[10] It is permissible to aggregate errors to determine their overall impact. Several individually harmless errors may cumulatively affect the defendant's substantial rights. *State v. Harris,* 2008 WI 15, ¶ 110, 307 Wis. 2d 555, 745 N.W.2d 397; *State v. Thiel,* 2003 WI 111, ¶ 59, 264 Wis. 2d 571, 665 N.W.2d 305; *Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000); *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990); *United States v. Wallace,* 848 F.2d 1464, 1472 (9th Cir. 1988).

¶ 114. Nowhere is there authority for the court to authorize the search conducted in the present case. The Order issued would not be a valid search warrant for a home or an office, and it is likewise insufficient for the search undertaken here. Courts and judges do not have free-floating authority to approve whatever searches, seizures, or novel surveillance techniques police may wish to pursue. The law provides specific authorizations for warrants, subject to specific limitations. The Order in this case falls outside any identified source of authorization.

¶ 115. Because the court Order authorizing the installation of the GPS failed to authorize "a search of a person, object or place" and a seizure "[p]ursuant to a valid search warrant" as required by Wis. Stat. § 968.10(3), I conclude that the installation of the GPS on Sveum's vehicle was a warrantless search and thus was presumptively invalid.[11] The State bears the burden of proving the search valid under some exception to the warrant requirement. It has failed to do so.

¶ 116. I turn now to Wis. Stat. § 968.10(6) authorizing a search "as otherwise authorized by law." The installation and use of a GPS tracking device are not authorized by any law.

¶ 117. No statute authorizes the issuance of the Order in the present case. It is not authorized under

---

[11] In *State v. Pallone*, 2000 WI 77, ¶ 29, 236 Wis. 2d 162, 613 N.W.2d 568, the court stated that "[a] warrantless search is per se unreasonable unless one of the 'few specifically established and well-delineated exceptions' justifies the search. The State bears the burden of proving that a warrantless search falls under one of the established exceptions." *Id.* (internal citations omitted). In the present case, the state makes no effort to justify the search on the basis of any recognized exception to the need for a warrant.

Wis. Stat. §§ 968.27–.32, governing the procedure for obtaining an order to intercept wire, electronic, or oral communications, because § 968.27(4)(d) defines electronic communications to exclude any communication from a tracking device. Even if the GPS tracking in the present case were analyzed as "interception of wire, electronic or oral communications," the Order contravenes other statutory requirements. Under § 968.30, no order may authorize interception of such communications "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than 30 days." Wis. Stat. § 968.30(5). The Order in the present case impermissibly authorized surveillance for up to 60 days.

¶ 118. Wisconsin Stat. §§ 968.34–.37 regulating the use of pen registers and trap-and-trace devices are likewise not applicable here. The existence of these provisions authorizing, subject to certain limits, other kinds of electronic surveillance and investigation simply highlights exactly what is missing in the present case: any source of legal authority underlying the Order purporting to authorize GPS tracking.[12]

¶ 119. No claim is made in the majority opinion or by the parties that the circuit courts have inherent power to issue search warrants.

¶ 120. In several states the notion that the power to issue search warrants may be inherent in the courts or stem from the common law has been rejected;

---

[12] Justice Crooks and Justice Ziegler observe that federal courts have authorization to issue warrants for installation of tracking devides under 18 U.S.C. § 3117 and Fed. R. Crim. Proc. 41(b)(4), but acknowledge that Wisconsin has no analogous Rules or Statutes. *See* Justice Crooks' concurrence, ¶ 77; Justice Ziegler's concurrence, ¶¶ 81–82.

judicial authority to issue search warrants is viewed as having a statutory source, subject to statutory limitations.[13]

---

[13] *See, e.g., City of Seattle v. McCready,* 868 P.2d 134, 143 (1994) (declining to recognize the issuance of search warrants as an inherent constitutional authority and holding that search warrants are "a form of process which is to be governed by statute or court rule"); *Meier v. Sulhoff,* 360 N.W.2d 722, 726 (Iowa 1985) ("Because there is no common-law right to issue a search warrant, we conclude that we lack the authority to expand by judicial fiat the purposes fixed by the legislature for which search warrants may lawfully issue.") (internal citations omitted); *State v. Baker,* 160 S.E.2d 556, 556–57 (1968) ("There is no common law right to issue search warrants. The issuing authority is subject to the constitutional prohibition against unreasonable searches and seizures . . . and subject to statutory control.").

The United States Supreme Court, in a case challenging pen register surveillance, concluded that federal district courts had the power to authorize such surveillance under Fed. R. Crim. Proc. 41, which regulates searches and seizures. *United States v. New York Tel. Co.,* 434 U.S. 159, 170 (1977). The court explained:

> Our conclusion that Rule 41 authorizes the use of pen registers under appropriate circumstances is supported by Fed. Rule Crim. Proc. 57(b), which provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute." Although we need not and do not decide whether Rule 57(b) by itself would authorize the issuance of pen register orders, it reinforces our conclusion that Rule 41 is sufficiently broad to include seizures of intangible items such as dial impulses recorded by pen registers as well as tangible items.

Wisconsin has not adopted an analogue of Rule 41.

Some states, including Colorado and Maine, have similarly broadened by court rule the grounds for issuance of search warrants. *See, e.g., People v. Leahy,* 484 P.2d 778 (1970); *State v. Cadigan,* 249 A.2d 750 (Me. 1969).

¶ 121. Electronic surveillance is upon us, raising significant and rapidly emerging privacy issues. A device in common usage, such as your cell phone, might be used to track your whereabouts. The law will have to tackle each new challenge as it arises. Courts may provide answers to some problems; others will require legislative solutions.

¶ 122. In the present case, we address GPS tracking of a personal vehicle. Searches and expectations of privacy in a personal motor vehicle are an area where the case law provides at least a sound point of departure. The lesson is that courts should not freely permit searches that infringe on recognized privacy interests in this arena.

¶ 123. "An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation."[14] In *Arizona v. Gant,* 129 S. Ct. 1710, 1720 (2009), the United States Supreme Court recently reaffirmed that "the [motorist's privacy interest in his vehicle is] important and deserving of constitutional protection."

¶ 124. Here, law enforcement tracked the motion and movements of Sveum's car with a GPS device, enabling increased police surveillance that in earlier times would have been physically, logistically, and financially impossible.

¶ 125. GPS locational tracking does not simply replace visual surveillance. Law enforcement officers could not, as a practical matter, track the vehicle

---

[14] *Delaware v. Prouse,* 440 U.S. 648, 662–63 (1979) (referring to *Adams v. Williams,* 407 U.S. 143, 146 (1972)).

through visual surveillance alone.[15] As the New York Court of Appeals explained:

> GPS is not a mere enhancement of human sensory capacity, it facilitates a new technological perception of the world in which the situation of any object may be followed and exhaustively recorded over, in most cases, a practically unlimited period. . . .

[15] In her concurrence, Justice Ziegler concludes that GPS surveillance of a private vehicle is not a constitutional search or seizure so long as the installation and monitoring are in public areas and therefore that a warrant or court authorization "may not be necessary." Justice Ziegler's characterization is that this surveillance constitutes "augmenting with appropriate technology their [law enforcement officers'] natural ability to conduct visual surveillance." The next questions become, "What is 'appropriate technology'?" and "What is meant by 'the natural ability to conduct visual surveillance'?" What are the "limits . . . upon this power of technology to shrink the realm of guaranteed privacy"? *See Kyllo v. United States,* 533 U.S. 27, 34 (2001).

Justice Ziegler's analysis relies on the radio "beeper" cases, Justice Ziegler's concurrence, ¶¶ 79–80 (citing *United States v. Karo,* 468 U.S. 705, 714–15 (1984); *United States v. Knotts,* 460 U.S. 276 (1983)). She also cites *United States v. Garcia,* 474 F.3d 994, 996–97 (7th Cir. 2007), and other cases that follow similar logic. Although the issue is not decided by the court today, it is worth noting that other courts have disagreed with this analysis, determining that GPS tracking is distinguishable from the form of tracking addressed in the "beeper" cases. *See, e.g., People v. Weaver,* 909 N.E.2d 1195 (2009); *State v. Jackson,* 76 P.3d 217, 223 (2003) ("We perceive a difference between the kind of uninterrupted, 24–hour a day surveillance possible through use of a GPS device, which does not depend upon whether an officer could in fact have maintained visual contact over the tracking period, and an officer's use of binoculars or a flashlight to augment his or her senses;" a GPS device "does not merely augment the officers' senses, but rather provides a technological substitute for traditional visual tracking.").

434

Disclosed in the data retrieved . . . will be trips, the indisputably private nature of which takes little imagination to conjure: trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour-motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on. What the technology yields and records is a highly detailed profile . . . .[16]

¶ 126.    I recognize that the problems presented by technologically assisted physical surveillance are complex and that the interests of privacy and crime detection are substantial. The warrant statutes are carefully crafted to protect privacy and law enforcement interests. These statutes have long and effectively governed searches and seizures in Wisconsin. The courts, and especially this court, should not do violence to these "bread and butter" law enforcement statutes in an ill-advised attempt to bend clear and well-established law to fit novel and fast-changing technology. The myriad of technical, legal and policy issues involved in electronic surveillance lend themselves to legislative resolution, not ad hoc judicial authorizations or a bewilderingly complex judicial attempt to shoehorn the possibilities of new surveillance technologies into the parameters of statutes that were never meant to accommodate them.

¶ 127.    For the reasons set forth, I conclude that there was no warrant. The constitution and statutes have been violated. The evidence should be suppressed.

¶ 128.    I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[16] *People v. Weaver,* 909 N.E.2d 1195, 1199 (N.Y. 2009).